**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------------x

| | |
|---|---|
| In re: | ) |
| | ) Chapter 7 |
| Lora Yakubova, | ) |
| | ) Case No. 24-10600 (PB) |
| Debtor. | ) |

--------------------------------------------------------------x

| | |
|---|---|
| Lawrence Paul and World Star Trading, Corp., d/b/a Spectra Fine Jewelry, | ) |
| Plaintiffs, | ) |
| | ) Adv. Proc. No. 25-01137 (PB) |
| v. | ) |
| Lora Yakubova, | ) |
| Defendant. | ) **FOR PUBLICATION** |

--------------------------------------------------------------x

**DECISION DENYING MOTION TO DISMISS ADVERSARY PROCEEDING
COMPLAINT AND GRANTING MOTION TO REOPEN BANKRUPTCY CASE**

**APPEARANCES**:

SHENWICK & ASSOCIATES
*Counsel for Lora Yakubova*
116 Plymouth Drive
Scarsdale, NY 10583
By: James H. Shenwick

UNITED STATES DEPARTMENT OF JUSTICE
*Counsel for the Office of the U.S. Trustee*
One Bowling Green
New York, NY 10004
By: Mark Bruh

OVED & OVED LLP
*Counsel for Lawrence Paul and World Star
Trading Corp. d/b/a Spectra Fine Jewelry*
401 Greenwich St.
New York, NY 10013
By: Timothy Savitsky

**Hon. Philip Bentley**
**U.S. Bankruptcy Judge**

TABLE OF CONTENTS

INTRODUCTION 3

FACTUAL AND PROCEDURAL BACKGROUND 4

DISCUSSION 6

I.   THE MOTION TO DISMISS THE COMPLAINT LACKS MERIT 6

     A.    PLAINTIFFS' DISCHARGE REVOCATION CLAIMS UNDER SECTION 727(D) ARE TIMELY 7

     B.    PLAINTIFFS' NON-DISCHARGEABILITY CLAIMS UNDER SECTION 523(C) ARE TIMELY 17

II.  CAUSE EXISTS TO REOPEN THE DEBTOR'S BANKRUPTCY CASE 22

     A.    GOVERNING LEGAL STANDARDS 22

     B.    PLAINTIFFS HAVE SHOWN AMPLE CAUSE TO REOPEN THIS CASE 24

CONCLUSION 26

<u>INTRODUCTION</u>

Lora Yakubova (the "Debtor"), a seller of high-end jewelry in Manhattan's Diamond District, filed a chapter 7 case in April 2024, listing assets worth only $250. Five months later, she received a discharge and her case was closed. The following September, shortly before the one-year anniversary of her discharge, her two largest creditors, Mr. Lawrence Paul and World Star Trading Corp. d/b/a Spectra Fine Jewelry (together, "plaintiffs"), filed an adversary complaint alleging that she had fraudulently concealed estate assets worth hundreds of thousands of dollars. On that ground, among others, the complaint seeks to revoke her discharge under section 727(d) of the Bankruptcy Code or, alternatively, to exempt plaintiffs' claims from discharge under section 523(a) of the Bankruptcy Code. Four months after filing their complaint, plaintiffs moved to reopen the Debtor's bankruptcy case.

The Debtor has moved to dismiss the adversary complaint on timeliness grounds. She contends that the Court lacks jurisdiction to adjudicate the suit until her bankruptcy case is reopened, which has not yet occurred. As a result, she argues, the filing of the complaint had no legal effect, and plaintiffs therefore failed to meet the one-year deadline set by section 727(e) to file discharge revocation claims. While there is surprisingly little case law on this issue, the Court concludes that the Debtor's contention lacks merit. A review of 28 U.S.C. § 1334, its legislative history, and the relevant provisions of the Bankruptcy Code make clear that bankruptcy courts have subject matter jurisdiction over all suits arising under the Bankruptcy Code, including suits arising under section 727, regardless of whether the bankruptcy case is open or closed.

The Debtor seeks to dismiss plaintiffs' section 523 claims on a different timeliness ground: that plaintiffs failed to assert those claims within 60 days after the first date set for the section 341 meeting in her case, as Bankruptcy Rule 4007(c) requires for certain section 523 claims. However,

this deadline does not apply to all such claims, and even when it does apply, it can be tolled on equitable grounds. Here, the evidence plaintiffs have presented raises genuine issues of material fact as to whether tolling is warranted, thereby defeating dismissal of the section 523 claims that are subject to the Bankruptcy Rule 4007(c) deadline.

The Court will therefore deny the Debtor's motion to dismiss. In addition, the Court will grant plaintiffs' motion to reopen this chapter 7 case. Although reopening the case is not a jurisdictional prerequisite to adjudicating plaintiff's claims, it could serve useful purposes. In particular, the evidence plaintiffs have presented suggests that an investigation into potential estate causes of action against the Debtor may be warranted. The Court expresses no opinion as to whether any particular claims have merit; the Court finds merely that an investigation of potential claims might benefit the Debtor's estate. The Court will therefore enter an order reopening the case and inviting the views of the Office of the U.S. Trustee and any other parties in interest on whether the Court should appoint a trustee in the reopened case pursuant to Bankruptcy Rule 5010.

## FACTUAL AND PROCEDURAL BACKGROUND

The Debtor was the sole owner and officer of Orchidea L&L Inc. ("Orchidea"), a retail diamond jewelry business that operated out of a booth on West 47th Street in Manhattan's Diamond District. Between 2020 and 2023, Orchidea reported approximately $17 million in gross sales.

In 2022, a dispute arose between the Debtor and a jeweler, Lawrence Paul, who had supplied goods to the Debtor. Mr. Paul and his company, World Star Trading Corp. d/b/a Spectra Fine Jewelry, filed claims against the Debtor and Orchidea for conversion of approximately $500,000 worth of jewelry that they had consigned to her, as well as related claims for breach of contract. Those claims were submitted to arbitration, and a three-member panel issued an award in favor of plaintiffs. In March 2024, the New York Supreme Court, New York County, confirmed

the arbitration award and entered judgment against the Debtor and Orchidea, jointly and severally, in the amount of $877,902.

Shortly thereafter, both Orchidea and the Debtor filed chapter 7 bankruptcy petitions. Orchidea filed its petition first, on March 6, 2024 (Case No. 24-10365). Kenneth Silverman was appointed as chapter 7 trustee the next day. Although the Orchidea case was initially filed as a no-asset case, Mr. Silverman filed a notice of possible dividends in July 2024 and set an October 2024 deadline to file proofs of claim. Last week, Mr. Silverman filed a report of no distribution, and the case was closed yesterday.

The Debtor filed her personal chapter 7 petition on April 9, 2024 (Case No. 24-10600). Albert Togut was appointed as chapter 7 trustee on the same day. This case proceeded as a no-asset chapter 7 case, and no bar date was set. The Debtor received a discharge on September 17, 2024, and her case was closed three days later.

On September 12, 2025—five days before the one-year anniversary of the Debtor's discharge—plaintiffs commenced an adversary proceeding by filing their complaint against the Debtor. The complaint asserts six causes of action:

- Three claims for revocation of the Debtor's discharge for fraud pursuant to sections 727(d)(1) and (2);
- A claim for denial of the Debtor's discharge for fraud pursuant to section 727(a);
- A claim to exempt plaintiffs' claims from discharge pursuant to section 523(a)(3), for failure to list plaintiffs on her bankruptcy schedules, and section 523(a)(6), for willful and malicious injury (*i.e.*, conversion); and
- A claim to reopen the Debtor's bankruptcy pursuant to section 350(b).

After filing an answer, the Debtor moved to dismiss the complaint on a number of grounds: (i) that the section 727 claims to revoke the Debtor's discharge were untimely, because the Court lacks jurisdiction to hear these claims until the bankruptcy is reopened and therefore the filing of

5

the complaint did not satisfy section 727(e)'s one-year deadline; (ii) that the section 523 claims were untimely, because those claims were not filed by the 60-day deadline set by Bankruptcy Rule 4007(c); (iii) that the Court lacks subject matter jurisdiction to hear plaintiffs' claims until the bankruptcy is reopened; and (iv) that the complaint fails to state a claim because the bankruptcy has not yet been reopened. The Debtor's motion attached numerous documents purporting to show that her counsel notified plaintiffs of the bankruptcy in the spring of 2024. Plaintiffs filed an opposition to the motion to dismiss, together with a declaration by their counsel responding to the notice issue.

In December 2025, the Court heard argument on the motion to dismiss. One issue that came up at argument was whether a formal motion to reopen the Debtor's bankruptcy might be needed in advance of a ruling on the motion to dismiss. The Court invited plaintiffs to file such a motion and stated that, if they did so promptly, the Court would defer its ruling on the motion to dismiss until it could also rule on the motion to reopen. Plaintiffs subsequently filed their motion to reopen and an affidavit in support, the Debtor filed a brief in opposition, and the Court heard argument on the motion to reopen. The Court now rules on both motions.

**DISCUSSION**

**I.      The Motion to Dismiss the Complaint Lacks Merit**

The Debtor's motion to dismiss rests principally on its two timeliness arguments: that (i) the section 727 discharge revocation claims are untimely because the Court lacked subject matter jurisdiction to hear those claims, rendering the filing ineffective to satisfy section 727(e)'s one-year deadline; and (ii) the section 523 claims are untimely because they were not filed by

6

Bankruptcy Rule 4007(c)'s 60-day deadline. The Court addresses these two arguments in turn below.[1]

The Debtor's two remaining grounds for dismissal—that the Court lacks subject matter jurisdiction to hear plaintiffs' claims until the bankruptcy is reopened, and that the complaint fails to state a claim because the bankruptcy has not yet been reopened—require no additional discussion. The Court's conclusion, in section I.A of this decision, that bankruptcy courts have subject matter jurisdiction over all suits arising under the Bankruptcy Code, regardless of whether the bankruptcy case is open or closed, disposes of both of those defenses.

## A. Plaintiffs' Discharge Revocation Claims Under Section 727(d) Are Timely

Section 727(e)(1) of the Bankruptcy Code provides, in pertinent part, that "a creditor . . . may request a revocation of a discharge . . . within one year after such discharge is granted." 11 U.S.C. § 727(e)(1).[2] It is undisputed that plaintiffs filed their complaint requesting revocation of the Debtor's discharge less than a year after that discharge was granted. The Debtor contends

---

[1] Plaintiffs contend that the Court need not address the merits of these two defenses, because the Debtor failed to plead them as affirmative defenses in her answer, thereby waiving these defenses.

This argument fails because, even if plaintiffs were correct that defenses of this sort are waived if not pled in the answer (an issue the Court need not reach), the Debtor could simply cure any such procedural defect by amending her answer. The Debtor filed her answer about one month after this case began, and she filed her motion to dismiss just one month after that, before any discovery was taken. Plaintiffs do not and could not contend that they suffered any prejudice from the Debtor's one-month delay in asserting this defense. Consequently, under the liberal rules that govern amendments to pleadings, an amendment would be permitted. *See Kontrick v. Ryan*, 540 U.S. 443, 459 (2004) ("An answer may be amended to include an inadvertently omitted affirmative defense, and even after the time to amend 'of course' has passed, 'leave [to amend] shall be freely given when justice so requires.'") (quoting Fed. R. Civ. P. 15(a)).

[2] Section 727(e) also provides an alternative deadline: If revocation of a discharge is requested under subsection (d)(2) or (d)(3) of section 727, rather than under subsection (d)(1), the request is timely if made before the case is closed, even if that is more than one year after the discharge was granted. 11 U.S.C. § 727(e)(2). This alternative deadline is not relevant to this case, because the Debtor's bankruptcy case was closed in September 2024, long before plaintiffs filed their complaint requesting a revocation of the Debtor's discharge.

that plaintiffs' revocation claims are nevertheless time-barred because, at the time the complaint was filed, her bankruptcy had been closed and not yet reopened. According to the Debtor, the closing of her bankruptcy stripped the Court of jurisdiction to rule on the discharge revocation complaint, and consequently the filing of the complaint had no legal effect.

**1. The case law gives limited guidance on whether the closing of this bankruptcy case stripped the Court of jurisdiction over plaintiffs' complaint**

The case law on this specific issue—whether the filing of a discharge revocation complaint in a closed bankruptcy case satisfies section 727(e)'s one-year deadline—is extremely sparse. The one decision that, to the Court's knowledge, has squarely ruled on this issue provided little explanation for its ruling. *See McDow v. Runkle (In re Runkle)*, 333 B.R. 734, 736 (Bankr. D. Md. 2005) (holding, without further explanation, that reopening of bankruptcy was not jurisdictional prerequisite to adjudicating section 727 suit because that suit fell within court's "arising under" jurisdiction). The one other reported decision that discusses this issue does so only in *dicta*. *See In re Ransom*, 2000 WL 33712560, at \*3-4 (Bankr. D. Id. 2000) (reopening bankruptcy and stating in *dicta* that doing so was not a jurisdictional prerequisite to the court's power to adjudicate a section 727(d) discharge revocation suit).

Despite the scarcity of cases on the specific section 727(e) issue before the Court, one would expect to find a significant body of case law on the broader underlying issue: For claims that arise under any provision of the Bankruptcy Code—not just section 727—is the reopening of a closed bankruptcy case a jurisdictional prerequisite for the suit? But even on this broader issue,

8

the case law is sparse. The Court is not aware of any decisions on this issue by courts within the

Second Circuit,[3] and even outside this Circuit, the case law provides limited guidance.

To the Court's knowledge, only one reported decision, *Menk v. Lapaglia* (*In re Menk*), 241

B.R. 896 (B.A.P. 9th Cir. 1999), has addressed this issue at any length.[4] In that case, the Ninth

Circuit B.A.P. held that the bankruptcy court had jurisdiction to decide the dischargeability of

specific debts under section 523 even though the underlying bankruptcy was closed. Although the

Court does not agree with the entirety of the B.A.P.'s lengthy decision, the Court agrees with and

adopts the following points:

- The statute governing bankruptcy court jurisdiction, 28 U.S.C. § 1334(b), by its plain terms confers jurisdiction over all actions arising under the Bankruptcy Code, regardless of whether the bankruptcy is open or closed. *In re Menk*, 241 B.R. at 903-5. In contrast to "arising in" and "related to" jurisdiction, nothing in the statutory definition of "arising under" jurisdiction ties it to the existence of a pending bankruptcy case. *Id.* at 907.
- A number of Bankruptcy Code provisions create rights that, by their nature, are likely to be enforced after the bankruptcy case has closed, without imposing any requirement that the bankruptcy be reopened before such suits can be brought. *Id.* at 906.

---

[3] As discussed in section I.I.3 below, the Debtor quotes selectively from two Second Circuit cases that she claims are on point, but those cases do not support her position. Neither case involves or in any way addresses the bankruptcy courts' jurisdiction over "arising under" proceedings.

[4] A small number of other courts have reached the same conclusion as *In re Menk*, but with much less supporting analysis. *See, e.g.*, *In re Taylor*, 216 B.R. 515, 521-22 (Bankr. E.D. Pa. 1998) (despite closing of bankruptcy, court had jurisdiction over suit under section 347(a) to distribute unclaimed funds because the claim "ar[ose] under 11 U.S.C. § 347(a)"); *Davis v. Courington* (*In re Davis*), 177 B.R. 907, 912 (B.A.P. 9th Cir. 1995) (bankruptcy court had jurisdiction over suit seeking damages for willful violation of the automatic stay, because the claim "ar[ose] under" section 362(h)).

Other courts have viewed this issue differently, holding that when a bankruptcy case is closed, the court's jurisdiction to hear a proceeding arising under the Bankruptcy Code is a discretionary matter, to be decided on a case-by-case basis. *See, e.g.*, *Fernandez v. GE Capital Mortgage Services, Inc. (In re Fernandez)*, 227 B.R. 174, 179 (B.A.P. 9th Cir. 1998) ("where the underlying [bankruptcy] case has been dismissed, a bankruptcy court retains *discretionary* subject matter jurisdiction over a complaint alleging a § 362(h) willful violation of the stay") (emphasis added); *Rodriguez v. Volpentesta (In re Volpentesta)*, 187 B.R. 261, 270-71 (Bankr. N.D. Ill. 1995) (exercising jurisdiction over non-dischargeability claims as a matter of discretion). As discussed in section I.I.2 below, this conclusion fails to take into account the differences between "arising under" and "related to" jurisdiction.

- The legislative history of section 1334 expressly recognizes that such post-bankruptcy suits are common and fall within the bankruptcy courts' "arising under" jurisdiction. *Id.* at 911 & n.5.
- Nothing in section 350 of the Bankruptcy Code concerning the closing and reopening of bankruptcy cases states or in any way suggests that a bankruptcy case must be open for the court to be able to adjudicate an "arising under" proceeding. *Id.* at 910-11.

The Court expands upon each of these points in the next section of this decision.

2. **A review of the text and legislative history of 28 U.S.C. § 1334, and of the relevant Bankruptcy Code provisions, makes clear that bankruptcy courts have jurisdiction over all proceedings arising under the Bankruptcy Code, regardless of whether the bankruptcy case is open or closed**

The proper starting point for an analysis of the issue before the Court is the text of 28 U.S.C. § 1334, the Judicial Code section that gives district courts—and by extension, bankruptcy courts, as units of district courts—jurisdiction over bankruptcy cases and proceedings.[5]

Subsections (a) and (b) of section 1334 provide in pertinent part as follows:

> (a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11 [*i.e.*, the Bankruptcy Code].

> (b) . . . [T]he district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

28 U.S.C. § 1334.

The effect of these provisions is to create bankruptcy jurisdiction of several distinct sorts. Bankruptcy courts have *exclusive* jurisdiction over "all cases under title 11," that is, over the bankruptcy cases themselves. 28 U.S.C. § 1334(a). In contrast, bankruptcy courts have *non-*

---

[5] The Southern District of New York, like most districts, has adopted a standing rule that automatically refers all bankruptcy cases from the district court to the bankruptcy court. *Amended Standing Order of Reference No. 12 MISC 00032* (S.D.N.Y. 2012). Consequently, this decision will refer to the jurisdiction of the bankruptcy courts as shorthand for the bankruptcy jurisdiction conferred on the district courts by section 1334.

*exclusive* jurisdiction, shared with the state courts, over three sorts of bankruptcy proceedings: those that (i) "arise under" the Bankruptcy Code, (ii) "arise in" a bankruptcy case, or (iii) are "related to" a bankruptcy case. 28 U.S.C. § 1334(b).

Although the Judicial Code does not define the three latter sorts of proceedings, those terms have well-established meanings under the case law. It is widely recognized that a proceeding "arising under title 11" is one that involves one or more causes of action created by the Bankruptcy Code. *See Worldview Entertainment Holdings Inc. v. Woodrow*, 611 B.R. 10 (S.D.N.Y. 2019) ("'Arising under' jurisdiction exists when the cause of action is created by [t]itle 11 of the Bankruptcy Code itself."); *accord, e.g.*, *Gupta v. Quincy Med. Ctr.*, 858 F.3d 657, 662 (1st Cir. 2017); *see also* H.R. Rep. No. 95-595, at 445 (1977) ("The phrase 'arising under' has a well defined and broad meaning in the jurisdictional context. By a grant of jurisdiction over all proceedings arising under title 11, the bankruptcy courts will be able to hear any matter under which a claim is made under a provision of title 11.").

In contrast, "arising in" proceedings are those "that are not based on any right expressly created by title 11, but nevertheless, would have no existence out of the bankruptcy." *Baker v. Simpson*, 613 F.3d 346, 351 (2d Cir. 2010) (citation omitted); *see also Gupta v. Quincy*, 858 F.3d at 662-63. "Related to" proceedings are those where the "outcome [of the proceeding] might have any conceivable effect on the bankrupt estate." *Parmalat Capital Finance Ltd. v. Bank of America Corp.*, 639 F.3d 572, 579 (2d Cir. 2011) (internal quotation marks and citation omitted); *see also Gupta v. Quincy*, 858 F.3d at 663 (describing "related to" proceedings as "those which potentially have some effect on the bankruptcy estate, such as altering debtor's rights, liabilities, options, or freedom of action, or otherwise have an impact upon the handling and administration of the bankrupt estate") (internal quotation marks and citations omitted).

11

Nothing in the text of section 1334, or any other provision of the Judicial Code or the Bankruptcy Code, states or in any way suggests that "arising under" jurisdiction—a subset of the federal question jurisdiction conferred on the federal courts as a whole by 28 U.S.C. § 1331—can only be exercised when a bankruptcy case is open. Moreover, a close reading of the text of section 1334(b) reinforces the conclusion that no such limitation exists. The text of that section expressly ties both "arising in" and "related to" jurisdiction to the existence of a bankruptcy case, by providing that jurisdiction of these two sorts exists only for proceedings "arising in or related to *cases* under title 11" (emphasis added). In contrast, "arising under" jurisdiction requires no connection to an existing bankruptcy case; it requires only that the proceeding arise under the Bankruptcy Code.

The implication of this textual distinction is that the scope of "arising in" and "related to" jurisdiction—but not that of "arising under" jurisdiction—narrows when the bankruptcy case is closed. Consistent with this reading of section 1334(b), the Second Circuit has held that "related to" jurisdiction does not survive the closing of a bankruptcy unless the bankruptcy court has specifically retained jurisdiction over the dispute:

> We join several other circuits in adopting the general rule that related proceedings [*i.e.*, those "related to" the bankruptcy] ordinarily should be dismissed following the termination of the underlying bankruptcy case. This general rule favors dismissal because a bankruptcy court's jurisdiction over such related proceedings depends on the proceedings' nexus to the underlying bankruptcy case.

*Porges v. Gruntal & Company, Inc. (In re Porges)*, 44 F.3d 159, 162 (2d Cir. 1995) (adding that the bankruptcy court has discretion to retain jurisdiction over specific adversary proceedings after the bankruptcy is closed); *accord, e.g.*, *Chapman v. Currie Motors, Inc.*, 65 F.3d 78, 80-82 (7th Cir. 1995); *see also* 9A COLLIER ON BANKRUPTCY ¶ 3022.02 (16th ed. 2025) ("It is often said

that bankruptcy court jurisdiction over a chapter 11 case 'shrinks' after plan confirmation, and narrows further after entry of a final decree closing a chapter 11 case.").

In contrast, there is nothing inherent in the nature of "arising under" jurisdiction that would cause it to narrow when a bankruptcy case ends. A case either "aris[es] under title 11" or it does not, regardless of whether the suit is brought during a bankruptcy case or after its completion. Moreover, the legislative history confirms that, when Congress enacted section 1334, it knew that "arising under" proceedings are frequently brought after the bankruptcy case is closed, and it intended to give the bankruptcy courts jurisdiction over such suits. The 1977 House Report for section 1334 says this explicitly:

> *Very often, issues will arise after the case is closed*, such as over the validity of a purported reaffirmation agreement, proposed 11 U.S.C. 524(b), the existence of prohibited postbankruptcy discrimination, proposed 11 U.S.C. 525, the validity of securities issued under a reorganization plan, and so on. *The bankruptcy courts will be able to hear these proceedings because they arise under title 11.*

H.R. Rep. No. 95-595, at 445 (1977) (emphasis added).

Even without consulting legislative history, it is clear from the Bankruptcy Code itself that many types of suits arising under the Bankruptcy Code are likely to be brought after the bankruptcy case is closed. The three sorts of suit mentioned in the House Report are good examples of suits likely to be brought post-closing. *See* 11 U.S.C. §§ 524(c), 525, 1145(a). Claims under section 727(d) to revoke a chapter 7 debtor's discharge, such as plaintiffs' claims in this case, are even more likely to be brought post-closing. By definition, discharge revocation claims cannot be brought until after the debtor has been discharged, and many bankruptcy courts routinely close

13

chapter 7 cases within days after entry of the discharge order.[6] Presumably for this reason, the Bankruptcy Code's statute of limitations for discharge revocation claims, section 727(e)(2), expressly permits such claims to be filed after the case is closed, so long as the suit is brought within a year after the discharge was granted. *See* 11 U.S.C. § 727(e)(2) (claims to revoke a debtor's discharge under section 727(d)(2) or (d)(3) may be brought "before the *later* of (A) one year after the granting of such discharge; and (B) the date the case is closed") (emphasis added).

Additional examples of "arising under" proceedings that are likely to be brought after the bankruptcy is closed include:

- Suits under section 523 to determine the dischargeability of particular debts;
- Suits under section 524(a) to enforce a debtor's discharge;
- Suits under section 347(a) to distribute unclaimed funds;
- Suits under section 362(h) to recover damages for violations of the automatic stay; and
- Suits to interpret or enforce orders of the bankruptcy court.

*See In re Menk,* 241 B.R. at 906 (collecting case law on these and other disputes heard by bankruptcy courts post-closing); *see also In re Ransom*, WL 33712560, at *3.

Despite the existence of this wide variety of suits that by their nature are likely to be filed after the bankruptcy is closed, no provision of the Judicial Code or the Bankruptcy Code requires the bankruptcy to be reopened before such a claim can be filed. The inescapable inference— reinforced by the House Report passage quoted above—is that "arising under" jurisdiction continues after the case is closed, without any need to reopen the case.

Of course, as discussed in section II below, it is sometimes advisable to reopen a closed bankruptcy case after a post-closing suit is filed. Under section 350(b), bankruptcy courts have

---

[6] In this Court, the standard practice at the conclusion of a chapter 7 case is to enter a combined order of discharge and final decree, and then to close the case three days later absent pending issues that warrant keeping the case open.

14

discretion to reopen the case when, as in this case, they find that "cause" exists to do so. 11 U.S.C. § 350(b); *see also* section II below. But this decision turns on practical considerations, such as whether a trustee is needed to investigate and prosecute claims or to distribute assets, and whether case administration of other sorts will be needed. Sometimes the decision to reopen can turn on considerations as mundane as whether doing so will facilitate the clerk's management of the case files. *See In re Menk*, 241 B.R. at 912-13 (reopening can "function[] primarily to enable the file to be managed by the clerk as an active matter"). However, neither section 350, nor any other Bankruptcy Code section or Bankruptcy Rule, requires that the bankruptcy be reopened before an "arising under" suit can be brought, much less that doing so is a jurisdictional prerequisite for such a suit.

### 3. The Second Circuit cases cited by the Debtor are inapposite

The Debtor cites two Second Circuit cases, *State Bank of India, New York Branch v. Chalasani (In re Chalasani)*, 92 F.3d 1300 (2d Cir. 1996), and *In re Porges*, 44 F.3d at 162, for the proposition that, when a bankruptcy case has been closed, the bankruptcy court lacks jurisdiction to adjudicate any claims unless the case is first reopened. Neither case supports such a rule.

In *In re Chalasani*, the debtor sought to reopen both his bankruptcy case and an adversary proceeding in that case in order to vacate the default judgment that had been entered against him in that suit. The bankruptcy court denied the debtor's motion, holding that the debtor had shown no grounds to vacate the default judgment, and consequently a reopening of the bankruptcy would prejudice creditors for no good reason. The Second Circuit affirmed, holding that the bankruptcy court's decision to deny the motion to reopen was not an abuse of its discretion. *In re Chalasani*, 92 F.3d at 1307.

15

The Debtor points to a single passage in the Second Circuit's decision, in which, as a preface to its discussion of the issues on appeal, the court described the requirements for vacating a default judgment:

> To challenge a default judgment, the movant must first reopen the case in the court where the default was taken. If successful in reopening, he must then make the required showing for undoing a default judgment. Both are necessary to obtain relief.

*Id*. According to the Debtor, this passing description of the requirements for vacating a default judgment should be construed as a ruling on a general point of bankruptcy jurisdiction—namely, that whenever a bankruptcy case has been closed, bankruptcy courts lack jurisdiction to grant relief of any sort unless the case is first reopened.

*Chalasani* does not support this conclusion. The Second Circuit's decision in that case contains no discussion of the scope of a bankruptcy court's jurisdiction following the closing of the bankruptcy case. Instead, the decision merely addresses the specific requirements for vacating a default judgment and holds that the bankruptcy court properly exercised its discretion in finding that the debtor had not satisfied those requirements.

The Debtor's reliance on *In re Porges* is equally misplaced. The Debtor cites *Porges* for the proposition that, once a bankruptcy case is closed, the bankruptcy court lacks jurisdiction to adjudicate any disputes except those over which the court has specifically retained jurisdiction. This misstates the holding of this case, which, as discussed in section I.I.2 above, addressed the bankruptcy courts' jurisdiction over "related to," not "arising under," proceedings. *See In re Porges*, 44 F.3d at 162.

In *Porges*, the debtor had voluntarily dismissed his chapter 13 petition after the bankruptcy court had orally ruled against him at the conclusion of an adversary proceeding trial involving

16

counterclaims related to the bankruptcy. The bankruptcy court approved the debtor's voluntary dismissal of the case but specifically retained jurisdiction to enter its findings of fact and conclusions of law on the issues that had been tried. The debtor appealed the bankruptcy court's subsequent entry of judgment against him, contending that the dismissal of his case deprived the court of jurisdiction to enter a judgment. The Second Circuit affirmed, holding that the bankruptcy court acted within its discretion in retaining "related to" jurisdiction over the adversary proceeding:

> [W]e hold that the dismissal of an underlying bankruptcy case does not automatically strip a federal court of jurisdiction over an adversary proceeding which was related to the bankruptcy case at the time of its commencement. The decision whether to retain jurisdiction should be left to the sound discretion of the bankruptcy court . . . .

*In re Porges*, 44 F.3d at 162. The bankruptcy courts' jurisdiction over "arising under" proceedings was not at issue in *In re Porges*, and the Second Circuit's decision contains no discussion of that issue.

*                *                *

For the reasons discussed above, the Court concludes that it has jurisdiction over plaintiffs' claims, all of which arise under the Bankruptcy Code, regardless of whether the Debtor's bankruptcy case is reopened. Plaintiffs' section 727(d) claims were filed less than a year after the Debtor obtained her discharge and therefore are timely under section 727(e).

**B.  Plaintiffs' Non-Dischargeability Claims Under Section 523(c) Are Timely**

In addition to seeking to revoke the Debtor's discharge under section 727(d), the complaint requests a determination that plaintiffs' claims against the Debtor—alleging that the Debtor converted jewelry worth $500,000 and breached numerous contractual obligations—are exempt from discharge under two independent Bankruptcy Code sections: section 523(a)(3), which

17

exempts from discharge claims that were not timely listed or scheduled in the bankruptcy, unless the creditor had notice or actual knowledge of the case, *see* 11 U.S.C. § 523(a)(3); and section 523(a)(6), which exempts from discharge any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity," *see* 11 U.S.C. § 523(a)(6).

The Debtor seeks to dismiss these claims on the ground that they are untimely under Bankruptcy Rule 4007(c), because they were not asserted within 60 days after the first date set for the section 341 meeting in her case. As explained below, the request for dismissal of plaintiffs' section 523(a)(3) claim fails as a matter of law, and the request for dismissal of plaintiffs' section 523(a)(6) claim fails as a matter of fact.

**1.   There is no deadline to file suits under section 523(a)(3)**

Bankruptcy Rule 4007(c) provides that, subject to exceptions not relevant here, "a complaint to determine whether a debt is dischargeable under § 523(c) must be filed within 60 days after the first date set for the § 341 meeting of creditors." Section 523(c), in turn, provides that certain suits that seek discharge exemptions under section 523(a)—specifically, those brought under subsections (a)(2), (a)(4) or (a)(6)—must be brought in the bankruptcy court. 11 U.S.C. § 523(c).[7]

Because Bankruptcy Rule 4007(c) by its terms applies only to complaints under section 523(c), and because section 523(c) applies only to non-dischargeability claims under subsections 523(a)(2), (a)(4) or (a)(6), it is clear that Bankruptcy Rule 4007(c)'s deadline does not

---

[7] In contrast, suits seeking exemption from discharge under section 523(a)'s other subsections are not mentioned in section 523(c) and therefore may be brought in either bankruptcy court or state court. *See* 11 U.S.C. § 523(c)(1); *see generally* CHARLES J. TABB, LAW OF BANKRUPTCY § 10.29 (5th ed. 2020).

apply to plaintiffs' claim under section 523(a)(3). This deadline applies only to plaintiffs' claim under section 523(a)(6).

The Debtor has advanced no argument to the contrary, nor has the Debtor contended that any other Bankruptcy Rule or any section of the Bankruptcy Code sets any other deadline for the filing of non-dischargeability claims. Consequently, no basis exists for the Debtor's challenge to the timeliness of plaintiffs' section 523(a)(3) claim.

**2. Disputed fact issues preclude dismissal of plaintiffs' section 523(a)(6) claim**

As just noted, plaintiffs' section 523(a)(6) claim is subject to Bankruptcy Rule 4007(c)'s 60-day deadline. Moreover, it is undisputed that plaintiffs failed to meet that deadline: The first date set for the Debtor's section 341 meeting was May 15, 2024, and plaintiffs did not file their claims until more than a year later, in September 2025.

The complaint preemptively addresses this deadline by alleging that the Debtor both failed to notify them of her bankruptcy filing and concealed her ownership of valuable assets. The Debtor does not dispute that these allegations, if proven, would toll the deadline set by Bankruptcy Rule 4007(c). *See European American Bank v. Benedict (In re Benedict)*, 90 F.3d 50, 54 (2d Cir. 1996) (holding that deadlines set by the Bankruptcy Rules are subject to the defenses of waiver, estoppel and equitable tolling).

In her motion to dismiss, the Debtor attempts to disprove a portion, but not all, of plaintiffs' alleged basis for equitable tolling. The motion attaches a number of documents that the Debtor claims her counsel sent to plaintiffs to notify them of her personal bankruptcy in the spring of 2024, around the time she filed that bankruptcy. Plaintiffs have filed a declaration by their counsel, Timothy Savitsky, in response to the Debtor's showing.

19

By presenting matters outside the pleadings, the Debtor has effectively transformed this portion of her motion—the portion seeking dismissal of plaintiffs' section 523(a)(6) claim—from one seeking dismissal under Fed. R. Civ. P. 12(b)(6) to one seeking summary judgment under Fed. R. Civ. P. 56. *See* Fed. R. Civ. P. 12(d), made applicable to this adversary proceeding by Bankruptcy Rule 7012(b); *see also Sahu v. Union Carbide Corp.*, 548 F.3d 59 (2d Cir. 2008). The Court therefore will treat this portion of the Debtor's motion as a motion for summary judgment.

The standards governing summary judgment motions are well known. Fed. R. Civ. P. 56(a), incorporated by Bankruptcy Rule 7056, provides that summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate that no genuine issue of material fact exists. An issue of fact is genuine if, based on the evidence presented, "a reasonable jury could return a verdict for the nonmoving party." *Overton v. New York State Div. of Military and Naval Affairs*, 373 F.3d 83, 89 (2d Cir. 2004) (citation omitted). In assessing whether a genuine issue of material fact exists, the Court must examine the evidence in the light most favorable to the nonmoving party. *Lucente v. IBM*, 310 F.3d 243, 253 (2d Cir. 2002).

Plaintiffs contend that, for a number of reasons, the notices attached to the Debtor's motion did not put them on notice of her personal bankruptcy or of the need to bring a non-dischargeability suit. *First*, most of the attached notices concerned the bankruptcy of the Debtor's jewelry company, Orchidea, and made no mention of her personal bankruptcy. *See* Debtor's motion to dismiss (Exhibits) at 13-35. Only two of the notices, both dated May 13, 2024 (*id.* at 29-30, 38-39), referenced the Debtor's personal bankruptcy.

*Second*, the two May 13 notices were not sent to plaintiffs. Instead, they were sent to plaintiffs' former lawyer, Mr. Savitsky, who had represented plaintiffs in the arbitration. Although

plaintiffs subsequently retained Mr. Savitsky to represent them in both the Orchidea bankruptcy and this bankruptcy, he did not represent plaintiffs in May 2024, when the notices were sent. *See* Savitsky Decl. ¶¶ 6-11. In addition, the May 13 notices were sent to Mr. Savitsky at his former law firm (Sam P. Israel, P.C.), not the law firm to which he had since moved (Oved & Oved, LLP). *See* Debtor's motion to dismiss (Exhibits) at 29-30 & 38-39 (both mailing address and email address to which the Debtor sent those notices were those of the Sam P. Israel firm, not Oved & Oved).

*Third*, plaintiffs contend that, even if they had received the May 13 notices, this would not have started the 60-day clock set by Bankruptcy Rule 4007(c), because at that time they had no reason to doubt the Debtor's sworn statement, in her bankruptcy schedules, that her assets had a total value of only $250. It was not until August 2025, the month before they commenced this suit, that plaintiffs discovered evidence that the Debtor had fraudulently concealed valuable additional assets. *See* Savitsky Decl. ¶ 14. According to plaintiffs, they had no reason until then to consider bringing a non-dischargeability suit against the apparently judgment-proof Debtor, and the Rule 4007(c) deadline should be tolled for this additional reason as well.

The Debtor has made little attempt to respond to these points. Prior to the December 16, 2025 oral argument on the motion to dismiss, the Debtor filed no reply of any sort. Then, more than a month after that hearing and a few days after the hearing on the motion to reopen, the Debtor filed an untimely reply affidavit, in which she attempted to rebut plaintiffs' showing that she had fraudulently concealed valuable assets. That affidavit, which the Debtor filed without leave, is not properly before the Court. And even if it were deemed part of the record on the motion to dismiss, it merely contests, without disposing of, the factual issues plaintiffs have raised in opposition to that motion.

Based on this record, the Court finds that genuine issues of material fact preclude summary judgment dismissal of plaintiffs' section 523(a)(6) claim.

## II.   Cause Exists to Reopen the Debtor's Bankruptcy Case

Plaintiffs move to reopen the Debtor's chapter 7 case under section 350(b), which permits the reopening of a case to "administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b); *see also* Bankruptcy Rule 5010 ("On the debtor's or another party in interest's motion, the court may, under §350(b), reopen a case."). The Bankruptcy Code does not define what constitutes "cause," and the determination is therefore committed to the discretion of the bankruptcy court. *Katz v. I.A. Alliance Corp. (In re I. Appel Corp.)*, 104 F. App'x 199, 200 (2d Cir. 2004); *accord In re Atari, Inc.*, 2016 WL 1618346, at *4 (Bankr. S.D.N.Y. 2016).

### A.  Governing Legal Standards

The burden of demonstrating "cause" to reopen rests with the moving party. *See In re Jones*, 2025 WL 432843, at *2 (Bankr. S.D.N.Y. 2025); *In re Kim*, 566 B.R. 9, 12 (Bankr. S.D.N.Y. 2017). At the same time, it is widely recognized that motions to reopen are liberally granted in most instances:

> This determination is generally a straightforward one, and in most instances, the decision to reopen a case is "ministerial and presents a limited range of issues, including whether further administration of the estate appears to be warranted."

*In re Arana*, 456 B.R. 161, 172 (E.D.N.Y. 2011) (quoting *Apex Oil Co. v. Sparks (In re Apex Oil Co.)*, 406 F.3d 538, 543 (8th Cir. 2005)); *see also MacIntyre v. JP Morgan Chase Bank, N.A. (In re MacIntyre)*, 2019 WL 1035683, at *3 (B.A.P. 10th Cir. Mar. 5, 2019) ("A motion to reopen should be liberally granted."); *In re Smith*, 426 B.R. 435, 440 (E.D.N.Y. 2010) ("[A] motion to

reopen is generally a 'ministerial act'.") (quoting *In re Menk*, 241 B.R. at 913), *aff'd, Smith v. Silverman (In re Smith)*, 645 F.3d. 186 (2d Cir. 2011)).

Absent countervailing considerations, the court should grant a motion to reopen the case if doing so is needed to administer estate assets or if there is a reasonable prospect that creditors would benefit from a reopening of the case. *See, e.g.*, *Zinchiak v. CIT Small Bus. Lending Corp. (In re Zinchiak)*, 406 F.3d 214, 224 (3d Cir. 2005) ("It is well-recognized that a bankruptcy proceeding may be reopened to administer estate assets and to determine whether additional assets may be available for creditors of the estate."); *see also In re Arana*, 456 B.R. at 165 ("[T]he benefit to creditors is uppermost."); *Stein v. United Artists Theatre Co. (In re Stein)*, 394 B.R. 13, 15 (Bankr. E.D.N.Y. 2008); *In re Upshur*, 317 B.R. 446, 450 (Bankr. N.D. Ga. 2004) ("[T]he most important consideration is the benefit to the creditors."); *In re Koch*, 229 B.R. 78, 85-88 (Bankr. E.D.N.Y. 1999).

At the same time, courts must consider any circumstances that may weigh against a reopening of the case. For example, courts have denied motions to reopen when the claims sought to be pursued are clearly meritless. *See In re Smith*, 645 F.3d at 189-90 (2d Cir. 2011) (holding that bankruptcy court acted within its discretion in denying motion to reopen on ground that the claims sought to be prosecuted in the reopened case "were entirely without merit"); *see also In re Atari*, 2016 WL 1618346, at *11 ("Courts routinely decline to reopen cases where there is no merit to the ultimate relief being requested."); *Herzig v. Herzig (In re Herzig)*, 96 B.R. 264, 266 (B.A.P. 9th Cir. 1989) (where the chance of any substantial recovery for creditors appears too remote to make the effort worth the risk," denial of motion to reopen was not an abuse of discretion) (quotation and citation omitted).

23

Prejudice to the debtor can also be grounds to deny a motion to reopen. However, "[g]enerally, a party's obligation to defend a claim on the merits in another forum is not the type of 'legal prejudice' that is relevant to whether a bankruptcy case should be reopened." *In re Atari*, 2016 WL 1618346, at *9; *accord In re Arana*, 456 B.R. at 174 (Bankr. E.D.N.Y. 2011) (obligation to defend a claim on the merits is "not the kind of legal prejudice" that should be a bar to reopening a case).[8]

## B. Plaintiffs Have Shown Ample Cause to Reopen this Case

The circumstances of this case provide ample grounds to reopen the Debtor's bankruptcy. Most important, plaintiffs have made a detailed factual showing indicating that the Debtor may have fraudulently concealed valuable assets and that a reopening of the bankruptcy could result in significant estate recoveries. For example, plaintiffs have provided evidence, including invoices and Instagram posts by the Debtor, suggesting that the Debtor failed to disclose high-value personal jewelry that she owned at the time of her chapter 7 filing. Plaintiffs also contend that the

---

[8] A few courts in this district have adopted a six-factor test to govern whether to reopen a bankruptcy. These six factors, sometimes referred to as the "*Easley-Brooks* factors," are:

(1) the length of time that the case was closed;
(2) whether a nonbankruptcy forum has jurisdiction to determine the issue that is the basis for reopening the case;
(3) whether prior litigation in the bankruptcy court determined that another court would be the appropriate forum;
(4) whether any parties would suffer prejudice should the court grant or deny the motion to reopen;
(5) the extent of the benefit to any party by reopening; and
(6) whether it is clear at the outset that no relief would be forthcoming if the motion to reopen is granted.

*In re Atari*, 2016 WL 1618346, at *4-5 (citing *In re Easley-Brooks*, 487 B.R. 400, 407 (Bankr. S.D.N.Y. 2013)).

In this case, the *Easley-Brooks* factors do not add much to the Court's assessment of whether to reopen the bankruptcy. Under the case law just discussed, that decision turns on two main considerations: whether there is a reasonable prospect that reopening the case would facilitate case administration or benefit creditors, and if so, whether those potential benefits are outweighed by specific cognizable harms. Several of the *Easley-Brooks* factors have little bearing on these considerations. In any event, as discussed below, the Court has considered all six *Easley-Brooks* factors and finds that they, too, support the decision to reopen this bankruptcy.

estate may have successor liability or other claims against the Debtor's new business, BNB Luxury LLC, which they argue is a mere continuation of her old business, Orchidea. For these and other reasons, the Court finds there is a reasonable prospect that a reopening of the case may benefit creditors.

The Debtor strongly disputes that these potential claims have merit and has proffered some evidence, in her untimely affidavit, to rebut these claims. But even if that evidence were properly part of the record on the motion to reopen, it would not change the Court's conclusion. Plaintiffs have shown that a reopening of the case could potentially benefit creditors, and the Debtor has not come close to showing that the plaintiffs' claims are "entirely without merit." *In re Smith*, 645 F.3d at 189-90. Cause to reopen the case therefore exists.[9]

Bankruptcy Rule 5010 provides that, in a reopened bankruptcy case,

> the United States trustee must not appoint a trustee unless the court determines that one is needed to protect the interests of the creditors and the debtor, or to ensure that the reopened case is efficiently administered.

The Court believes it would be helpful to consider the views of the U.S. Trustee and other parties in interest on whether to appoint a chapter 7 trustee. Consequently, the order reopening the case will set a schedule for the submission of filings on this issue.

---

[9] Application of the *Easley-Brooks* factors yields the same result. Three of these factors (# 4, 5 and 6) duplicate the key considerations discussed above; for the reasons just noted, these factors favor reopening. Factor # 1 also favors reopening, since the one-and-a-half-year period during which the Debtor's bankruptcy has been closed is shorter than that in many cases where courts have found cause to reopen. *See, e.g.*, *In re Arana*, 456 B.R. at 175-76 (reopening bankruptcy that had been closed for nearly five years); *In re Stein*, 394 B.R. at 16 (reopening bankruptcy that had been closed for more than eight years). Factor # 3 favors reopening as well, since there has been no prior bankruptcy court ruling that another court is a more appropriate forum. Factor # 2—whether a nonbankruptcy forum has jurisdiction to determine the issue that is the basis for reopening the case—weighs against reopening, since under 28 U.S.C. § 1334(b), state courts have concurrent jurisdiction with bankruptcy courts to adjudicate claims that arise under the Bankruptcy Code. However, in the circumstances of this case, the Court believes this factor is entitled to little or no weight.

## CONCLUSION

For the foregoing reasons, the Court will enter an order denying the Debtor's motion to dismiss the adversary proceeding, granting plaintiffs' motion to reopen the bankruptcy case, and setting a schedule for submissions by the U.S. Trustee and other parties in interest on whether a chapter 7 trustee should be appointed. The parties are directed to settle an order within five business days of the entry of this decision.

Dated: April 14, 2026
        New York, New York

/s/ *Philip Bentley*

Honorable Philip Bentley
United States Bankruptcy Judge

26